BLD-143                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3997
_____

ISRAEL JACOB TORRES,
                         Appellant

v.

SECURITY CAPTAIN T. P. CLARK;
SUPERINTENDENT MIKE WENEROWICZ;
S. K. KEPHART, Correctional Classification Program Manager
HEARING EXAMINER SHARON LUQUIS
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-10-cv-01323)
District Judge:  Honorable William W. Caldwell
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
March 7, 2013

Before:  SCIRICA, HARDIMAN and GREENAWAY, JR., Circuit Judges

(Opinion filed: April 9, 2013)
_____

OPINION
_____

PER CURIAM

Israel Torres, a Pennsylvania state inmate, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 in the District Court, alleging violations of his First, Eighth, and Fourteenth Amendment rights by various prison officials at the State Correctional Institute at Frackville ("SCI-Frackville").[1] The defendants moved for summary judgment, which the District Court granted. Torres timely filed this appeal.

We have jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of summary judgment de novo, using the same standard as the District Court. Pichler v. UNITE, 542 F.3d 380, 385 (3d Cir. 2008). Summary judgment is appropriate if the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because we agree with the District Court that the defendants were entitled to summary judgment, we will affirm.

I.

In March 2010, the Security Office at SCI-Frackville intercepted an outgoing letter from Torres which contained disparaging, profanity-laced statements about Correctional Officer Michael Blankenhorn, who worked in the Security Office and had previously issued Torres a misconduct report for attempting to use the mail system to send gang-related correspondence to other inmates. The letter concluded with the statement "[i]f [Blankenhorn] keeps acting like he is above policy/law somebody is going to break his

---

[1] After filing his complaint, Torres was transferred to SCI-Forest. He was later transferred to SCI-Rockview, where he is presently confined.

2

jaw is what I assume?!" Captain T.P. Clark, who headed the Security Office, issued Torres a misconduct report charging him with (1) threatening an employee with bodily harm; and (2) using abusive, obscene, or inappropriate language to an employee.

Torres pleaded not guilty at the misconduct hearing, arguing (1) the letter's concluding statement was not intended as a threat against Blankenhorn but rather an expression of frustration about prison life; and (2) the letter's remaining references to Blankenhorn did not constitute using abuse, obscene, or inappropriate language to an employee because Torres believed the letter would only be read by its intended recipient. Hearing Examiner Sharon Luquis found that Torres knew that Blankenhorn would read the letter because Blankenhorn had previously issued him a misconduct report after screening one of his earlier outgoing letters, and that the statement about Blankenhorn having his jaw broken was intended as a threat. She accordingly found Torres guilty of the charges in the misconduct report and sanctioned him to an additional 90 days confinement in the Restricted Housing Unit ("RHU"), where he was already serving time for multiple previous misconducts.[2] Following the hearing, Torres was transferred to a cell within the RHU known as the T-Cell, which is designed for use as both a security-

_____

[2] Torres received 60 days for threatening an employee with bodily harm, and 30 days for the charge of using abusive, obscene, or inappropriate language to an employee.

based transition cell and a psychiatric observation cell.  Torres was confined in the T-Cell for approximately six days before being returned to a standard cell within the RHU.[3]

Torres filed an administrative appeal from the misconduct hearing, claiming that Clark had issued him the misconduct report in retaliation for writing disparaging statements about Blankenhorn.  Torres also filed a grievance, reiterating the retaliation claim against Clark and further asserting that the decision to place him in the T-Cell was retaliatory.  Torres also challenged the conditions of the T-Cell, claiming that he was forced to sleep on a hard plastic slab instead of a mattress, resulting in lower back pain, and that the 24-hour lighting in the cell caused him to suffer from vision problems and sleep deprivation.  The Hearing Review Committee sustained the misconduct and the Grievance Coordinator rejected Torres's grievance.  His appeals of those decisions to Superintendent Michael Wenerowicz were unsuccessful.  Thereafter, Torres filed the instant complaint pursuant to § 1983 in the District Court.

## II.

Torres's complaint first advanced retaliation claims against Clark and Luquis, arguing that Clark issued him the misconduct report and that Luquis placed him in the T-Cell in retaliation for his letter's disparaging statements about Blankenhorn.  With respect to the misconduct report's charge that the letter's concluding statement constituted a

---

[3] During his time in the T-Cell, Torres was seen by a nurse after complaining of back pain, vision problems, and dandruff.  He was subsequently seen by a physician, to whom he complained about dandruff problems.  The physician prescribed a dandruff shampoo.

4

threat against Blankenhorn, we agree with the District Court that the statement is not constitutionally protected because it is a "true threat." See Watts v. United States, 394 U.S. 705, 707 (1969); United States v. Fullmer, 584 F.3d 132, 154 (3d Cir. 2009). Because the statement is not constitutionally protected, Torres cannot rely on it as the basis for a retaliation claim. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). With respect to the misconduct report's charge that other statements in Torres's letter constituted the use of abusive, obscene, or inappropriate language towards Blankenhorn, we agree with the District Court that these statements plainly violated the prison's permissible restriction on Torres's First Amendment rights and therefore cannot form the basis for a retaliation claim. See Cowans v. Warren, 150 F.3d 910, 912 (8th Cir. 1998); Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir. 1986). We are also unconvinced by Torres's claim that the decision to place him in the T-Cell was retaliatory. We agree with the District Court that because the defendants were familiar with Torres's history of persistent attempts to circumvent prison policies in order to send unauthorized, gang-related correspondence to other inmates, there were substantial reasons to temporarily place him in the security-based transition cell following the hearing.

Torres's complaint also alleged that Luquis violated his due process rights by denying him the opportunity to question Clark at the misconduct hearing and by failing to provide adequate process prior to placing him in the T-Cell. However, because Torres did not exhaust these claims during his administrative appeals of the misconduct proceeding, they are procedurally defaulted for purposes of his § 1983 action. See Spruill

5

v. Gillis, 372 F.3d 218, 231-32 (3d Cir. 2004). Finally, Torres's complaint advanced Eighth Amendment claims based on his six-day confinement in the T-Cell. We agree with the District Court that Torres has not alleged facts sufficient to establish an Eighth Amendment violation based on the conditions of his confinement in the T-Cell, see Rhodes v. Chapman, 452 U.S. 337, 346 (1991); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), or based on the medical attention he received there, see Estelle v. Gamble, 429 U.S. 97 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

III.

For these reasons, we will summarily affirm the judgment of the District Court.